## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                    Criminal No. 05-278 (ADM/FLN)

        Plaintiff,

   v.                                       **REPORT AND RECOMMENDATION**

Jesus Torres-Villalobos,

        Defendant.

_____

William Koch, Assistant United States Attorney, for the United States
Daniel Gertz, Esq. and John Brink, Esq., for Defendant

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on September 28, 2005, on Defendant's Motions to Suppress Statements, Admissions and Answers [#20]; to Dismiss the Indictment for Violation of the Double Jeopardy Clause [#21]; and to Dismiss the Indictment for Failure to State an Offense [#22]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, this Court recommends Defendant's Motions be denied.

## I. FINDINGS OF FACT

Defendant Jesus-Torres Villalobos has been charged with illegal reentry after deportation, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2), and 6 U.S.C. §§ 202(3), 202(4) and 557. During the investigation, Defendant was interviewed by Immigration Enforcement Agent Mark Lee. Defendant also made statements to Special Agent Jessica Begres.

### A.     Agent Mark Lee

Immigration Enforcement Agent Mark Lee testified for the Government at the Court hearing on September 28, 2005.  He stated that as an agent with the Bureau of Immigration and Customs Enforcement (BICE), he interviews people who are potentially in the country illegally and are being held in custody by local authorities.  He stated that the interviews are administrative in nature.

On March 1, 2005, he interviewed Defendant at the Hennepin County Detention Center for approximately 15-20 minutes.  At the time of the interview, Agent Lee knew that Defendant had been previously deported and that he had been arrested several times and convicted on narcotics and murder charges.  He stated that during the interview he used the I-213 form, which includes approximately 40 questions.  See Govt. Ex. 5.  At the end of the interview, Agent Lee recorded Defendant's responses on a computer-generated I-213 form.  See Govt. Ex. 6.  He stated that most of the questions he asked Defendant were biographical questions, including identification, date of birth, and citizenship.  He also asked questions regarding the date and manner of Defendant's last entry into the United States, and whether he had been convicted of any crimes.

At the end of the interview, he had Defendant fill out a form entitled "Notice of Rights and Request for Disposition."  Govt. Ex. 1.  The form required Defendant to choose one of three dispositions of his case.  Defendant initialed and checked a box, by which he admitted to being in the United States illegally, indicated that he believed he would not face harm if he returned to his country, and waived his right to a hearing before the immigration court.  See id.  Agent Lee never informed Defendant of his Miranda rights, and the rights did not appear on the "Notice of Rights and Request for Disposition" form.

Agent Lee questioned Defendant in English.  He stated that Defendant never asked to

conduct the interview in Spanish and that his answers, which were responsive to the questions, made him believe that Defendant understood the questions in English.

### B.      Agent Jessica Begres

BICE Special Agent Jessica Begres testified on September 28, 2005.  She stated she was the Case Agent on Defendant's case.  She stated that as the Case Agent, she reviewed Defendant's immigration file, which contained information that Defendant was convicted of second-degree manslaughter in Minnesota and that he had prior convictions for illegal reentry.  The file contained deportation forms from 2001 and 2003, photos of Defendant, and certified copies of his fingerprints. According to documents in the file, Defendant was deported from Laredo Texas on February 5, 2003.   Govt. Ex. 2, Warrant of Removal/Deportation.   The Warrant of Removal included Defendant's photograph, signature and fingerprint.   The file also included documentation of Defendant being released from Bureau of Prison custody to the custody of BICE on February 5, 2003.  Govt. Ex. 3.    Agent Begres testified that on August 31, 2005, she and Agent Kevin Lang transported Defendant from the St. Cloud prison, where he was being detained in state custody, to an appearance in federal court in St. Paul.  Agent Begres identified herself to Defendant and told him she would transport him to a court appearance pertaining to some "immigration matters."  Defendant was in custody and handcuffed in the back of the vehicle for the duration of the 90-minute ride.

According to Agent Begres, upon being placed in the car Defendant immediately asked the Agents to "tell [him] about his 1326 case."  He stated that he could not be charged on 1326 because he did not cross in Texas or Arizona, and California does not charge for reentry.  He said that they could not use his prior convictions for sentencing enhancements because he was appealing those convictions.  Agent Begres said that Defendant spoke in English for approximately twenty minutes.

-3-

She said that none of his comments were made in response to any questions posed by her or Agent Lang. Agent Begres asked Defendant only whether he was married and his music preference; Agent Lang asked no questions of Defendant. She said that she answered Defendant's question about whether his son could apply for U.S. citizenship on his behalf. Begres stated that she considered Defendant to be in custody during the transport, but that she did not read him his <u>Miranda</u> rights because she did not interrogate or question Defendant.

Defendant moves to suppress the statements he made during his interview with Agent Lee on March 1, 2005, and the statements he made to Agents Begres and Lang on August 31, 2005. He also moves to dismiss the Indictment for violation of the double jeopardy clause and for failure to state an offense. For the reasons that follow, the Court recommends Defendant's Motions be denied.

## II. CONCLUSIONS OF LAW

### A. Motion to Suppress

Defendant moves to suppress the statements Defendant made during his interview with Agent Lee on March 1, 2005. He argues that the statements violate <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and are therefore inadmissible. <u>See</u> Def. Post-Hearing Mem. [#27] pp. 1-2. In its responsive Post-Hearing Memorandum, the Government represents that it does not intend to offer Defendant's statements made to Agent Lee during its case-in-chief. <u>See</u> Govt. Mem. [#28] p. 1. As such, insofar as Defendant's motion to suppress pertains to the statements he made to Agent Lee, the Motion should be denied as moot.

Defendant also moves to suppress the statements Defendant made to Agents Begres and

Lang during his transport on August 31, 2005.[1]  The Court finds that these statements do not violate Miranda, and are admissible.

To protect the rights guaranteed by the Fifth Amendment, the Supreme Court adopted the Miranda rules to be followed during custodial interrogations.  Miranda prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his Fifth Amendment privilege against self-incrimination and right to an attorney.  An officer's obligation to give the Miranda warnings to a suspect only applies when the individual is in custody.  See Stansbury v. California, 511 U.S. 318, 322 (1994).

Here, the government does not dispute that Defendant was in custody while Agents Begres and Lang were transporting him to St. Paul.  The Government also concedes that Defendant did not receive Miranda warnings.  The only question for the Court to determine is whether the agents interrogated Defendant during the transport.

Interrogation is not limited to express questioning; it includes words or conduct that the officer should know are "reasonably likely to illicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).  Miranda does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer.  See United States v. Hayes, 120 F.3d 739, 744 (8th Cir. 1997) (citing United States v. Hawkins, 102 F.3d 973, 975 (8th Cir. 1996)); see also United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000).  For instance, in Hayes, the Eighth Circuit held that there was no Miranda violation

---

[1] Defendant offered no argument regarding the suppression of these statements in his post-hearing memorandum.

where the defendant voluntarily made statements while agents explained the interview procedure and before <u>Miranda</u> warnings were given.  120 F.3d at 744.  Spontaneous or volunteered statements are not the result of interrogation, and therefore do not violate a suspect's <u>Miranda</u> rights. <u>See</u> <u>Innis</u>, 446 U.S. at 299- 300; <u>United States v. Griffin</u>, 922 F.2d 1343, 1356-57 (8th Cir.1990).

Here, Defendant's statements were spontaneous utterances, unresponsive to any questioning by the agents.  Agent Begres testified that the only questions she asked Defendant concerned his marital status and musical tastes.  These questions do not constitute interrogation because they were not likely to elicit incriminating evidence.  The remainder of the conversation was initiated of Defendant's own accord.  The agents responded by answering his questions and explaining some of the law regarding his son's immigration issues.  Because the agents never interrogated Defendant, they were not required to advise Defendant of his <u>Miranda</u> rights.  Thus, there is no basis for suppression of Defendant's voluntary statements.[2]  Defendant's Motion to suppress the statements he made to Agents Begres and Lang should be denied.

### B.    Motion to Dismiss

### 1.    Double Jeopardy

Defendant also moves to dismiss the indictment for violation of the double jeopardy clause. <u>See</u> [#21].  He argues that because he was previously convicted of illegal reentry in 2001, the current

---

[2]

In his Memorandum in Support of his Motion to Suppress Statements [#20], Defendant also argues that the statements should be suppressed because Defendant's statements were made involuntarily, without the assistance of counsel, while Defendant was being held unlawfully, in violation of the Fourth, Fifth and Sixth Amendments.  He offered no argument regarding any of these alleged violations during the hearing or in his Post-Hearing Memorandum.  The Court concludes Defendant has failed to establish a Fourth, Fifth or Sixth Amendment violation.

prosecution violates his rights under the Fifth Amendment.  See [#21].[3]  At the hearing, however, the Government established that the instant prosecution for illegal reentry arises from events unrelated to the earlier conviction for illegal reentry.  In this case, the Government alleges that Defendant pled guilty in December 2001 to illegal reentry in the Western District of Texas, and that he was subsequently deported in February 2003.  See Govt. Omnibus Response [#24].  By Indictment, the Government alleges that Defendant illegally reentered the country after his deportation in 2003.  Thus, the instant charges are unrelated to Defendant's prior conviction for illegal reentry.  Defendant has failed to establish that the instant charges violate Defendant's right against being retried for the same offense, and there is no basis for dismissal on double jeopardy grounds.

### 2.        Failure to State an Offense

Defendant also argues, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), that the Indictment should be dismissed because it fails to state an offense.  The Indictment alleges that Defendant unlawfully entered the United States in February 2005, after having been deported in 2001 and 2003, and convicted of the aggravated felony of second-degree manslaughter in 1998, in violation of 8 U.S.C. §§ 1326(a), 1326(b)(2), and 6 U.S.C. §§ 202(3), 2002(4) and 557.  Defendant argues that the prior conviction for an "aggravated felony" is an element of the charged offense, and that the "aggravated felony" alleged in the Indictment, manslaughter in the second degree under Minnesota law, does not constitute an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F), and therefore the Indictment should be dismissed.

---

[3]

Defendant offered no argument regarding the alleged double jeopardy violation in his Post-Hearing Memorandum [#27].

Section 1101(a)(43)(F) defines an "aggravated felony" as a "crime of violence" as set forth in 18 U.S.C. § 16.  That provision, in turn, defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Under Minnesota law, a person is guilty of "manslaughter in the second degree" if she causes the death of another by "her culpable negligence whereby [she] creates an unreasonable risk, and consciously takes chances of causing death or great bodily harm to another."  Minn. Stat. § 609.205(1).  Defendant argues that because in certain circumstances under Minnesota law, manslaughter in the second degree does not contain an element of physical force or require that physical force be used "against the person or property of another," it does not constitute an "aggravated felony" under the federal immigration statutes he is alleged to have violated, and that therefore, the Indictment should be dismissed for failure to state an offense.

The Government argues that because Defendant raised the same argument in United States v. Torres-Villalobos, 54 Fed.Appx. 793 (5th Cir. 2002), he is barred by the doctrines of res judicata and collateral estoppel from raising the argument in the instant case.  In the alternative, the Government asserts that second-degree manslaughter is properly considered to be an "aggravated felony."  See Govt. Mem. [#24; #28].  Because the Court finds that the Indictment sufficiently sets forth the elements of the claims alleged, it need not determine whether the doctrines of res judicata and collateral estoppel apply, or whether second-degree manslaughter is properly considered to be an "aggravated felony."

Defendant moves to dismiss the Indictment for failure to state an offense because the

"required predicate crime of second-degree manslaughter is not an 'aggravated felony.'" An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); see also United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995). An indictment is sufficient if it contains facts and elements of the alleged offense necessary to inform the accused of the charge so that he or she may prepare a defense and invoke the Double Jeopardy Clause when appropriate. See Hamling v. United States , 418 U.S. 87, 117 (1974); United States v. Stands, 105 F.3d 1565, 1574-75 (8th Cir. 1997). An indictment is sufficient unless it fails to state a material element of the offense. See United States v. Zangger, 848 F.2d 923, 925 (8th Cir. 1988). Courts will normally give the indictment a common sense construction in determining whether the indictment is sufficient and uphold an indictment even if it contains a technical error or omission. See United States v. Darby, 37 F.3d 1059, 1064 (4th Cir. 1994); United States v. McIntosh, 23 F.3d 1454, 1457 (8th Cir. 1994). Courts consider an indictment sufficient "unless no reasonable construction can be said to charge the offense." United States v. Morris, 18 F.3d 562 (8th Cir. 1994).

Here, Defendant alleges that the Indictment, which alleges that he illegally reentered the country after having been convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2), is insufficient because his conviction for second-degree manslaughter does not constitute an aggravated felony. Section 1326(a) provides that an alien without a prior conviction who is convicted of illegal reentry following deportation faces a two-year maximum prison sentence. Under section 1326(b)(2), however, if the alien's prior deportation was subsequent to a conviction for an aggravated felony, the maximum sentence is twenty years. The Supreme Court has held that, because section 1326(b)(2) provides for a sentencing factor and not a separate criminal offense, the

aggravated felony triggering the increased maximum penalty need not be alleged in the indictment. Almendarez-Torres v. United States, 523 U.S. 224, 235 (1998); see also United States v. Haggerty, 85 F.3d 403, 406 (8th Cir. 1996) (holding same).  Therefore, because Defendant's alleged prior conviction is a sentencing factor, and not an element of the violation alleged under section 1326(a), it need not be pled in the Indictment.

The Eighth Circuit's decision in United States v. Patterson, 412 F.3d 1011, 1015 (8th Cir. 2005), instructs the Court's reasoning in the instant case.  In Patterson, the court rejected the defendant's argument that his Sixth Amendment rights were violated when the District Court based his sentence, in part, on prior convictions that were not charged in the indictment or found by a jury. The court found that in United States v. Booker, — U.S. —, 125 S.Ct. 738 (2005), the Court reaffirmed Almendarez-Torres, which held that the fact of a prior conviction need not be admitted by the defendant or proved to a jury beyond a reasonable doubt. Id., citing Shepard v. United States, — U.S. —, 125 S.Ct. 1254, (2005).[4]  The court went on to dismiss Patterson's argument that the district court erred when it "categorized" the prior conviction as a violent felony because such categorization required a factual findings beyond simply finding a prior conviction.  The court, relying on Kempis-Bonola, 287 F.3d at 703, held that "the nature of a prior conviction is [not] to be

---

[4] The Court did not overturn Almendarez in Booker.  In Booker, the Court made clear that any fact that increases a sentence above the maximum sentence authorized by a jury verdict or guilty plea must be admitted by the defendant or submitted to a jury for a finding beyond a reasonable doubt.  The Court reaffirmed its holding in Apprendi v. New Jersey, 530 U.S. 466 (2000) and maintained Apprendi's exception for the fact of a prior conviction. 125 U.S. at 756.  Thus the fact of a prior aggravated felony falls within the prior conviction exception to Apprendi, and need not be admitted by the defendant or proved to a jury beyond a reasonable doubt.  See United States v. Kempis-Bonola, 287 F.3d 699, 702 (8th Cir. 2002) (noting that Apprendi did not overrule Almendarez-Torres and holding that "existing precedent dictates that the 'aggravated felony' consideration of § 1326(b)(2) is not a fact that must be submitted to a jury"); United States v. Muro-Mendoza, 126 Fed.Appx. 329, 331 (8th Cir. 2005) (holding that district court did not violate the Sixth Amendment, as construed by the Supreme Court in Booker, when it applied the sentencing enhancement contained in section 1326(b)(2) without submitting the issue of the aggravated felony to a jury).

treated differently from the fact of a prior conviction....Once the sentencing court determines that a prior conviction exists, the characterization of that conviction as a violent felony is a legal matter for the court." Id. at 1016, citing United States v. Marcussen, 403 F.3d 982, 984 (8th Cir. 2005); United States v. Nolan, 397 F.3d 665, 667 n. 2 (8th Cir. 2005).

Here, following Patterson, Almendarez-Torres, and Haggerty, the Court concludes that under section 1326(b)(2), a prior conviction for an aggravated felony is a condition triggering enhancement, and is not an element of the immigration violations alleged.  Because section 1326(b)(2) is an enhancement provision, the indictment need not charge a prior aggravated felony to be valid.  See Haggerty, 85 F.3d at 406, citing United States v. Hamell, 3 F3d. 1187, 1189 (8th Cir. 1993) (enhancement need not be charged in indictment); see also United States v. Walton, 142 Fed.Appx. 936, 937 (8th Cir. 2005) (a prior felony conviction is a sentencing factor that need not be pleaded in the indictment or put to a jury).  Rather, the existence and characterization of a prior conviction are matters for the sentencing court.  Thus, the Court finds that the Indictment sufficiently sets forth the facts and elements of the alleged offense necessary to inform Defendant of the charges against him.  Whether his sentence should be enhanced under section 1326(b)(2) because of a prior conviction will be determined in a later court proceeding.  Defendant's Motion to Dismiss the Indictment should be denied.

## III.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motions to Suppress Statements, Admissions and Answers [#20], to Dismiss the Indictment for Violation of the Double Jeopardy Clause [#21], and to Dismiss the Indictment for Failure to State an Offense [#22], should be **DENIED.**

DATED: October 21, 2005.                    s/ *Franklin L. Noel*
                                            FRANKLIN L. NOEL
                                            United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **November 4, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **November 4, 2005,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.